Good morning, your honors, and may it please the court. Jamie Elizabeth Schmid, Federal Defenders, on behalf of Mr. Barron. I'd like to reserve two minutes of my time for rebuttal and I'll do my best to keep my eye on the clock. Mr. Barron's conviction must be reversed and remanded for one simple reason. Mr. Barron complied with Officer Tron's command to lift up his seat cushion. This constituted a search which Officer Tron lacked any reasonable suspicion to conduct. The officer didn't ask him to lift the cushion, didn't ask him for access to the truck, didn't ask him directly for a search. So why should we treat the question about what is this under your seat as a search? Yes, your honor. So a couple of reasons. First, I would note that the district court didn't treat it as a question. In the factual background section of the order itself, the district court differentiates between the officer asking what is that with a question and then there's a following command of get back off the seat. Then Mr. Barron gets back off the seat and then the officer says under the seat. And so there's a distinction. It's not all one question. There's a command that breaks up the, a command that breaks up the what is that question and the under the seat question. Your position is that we should, we should approach this issue as one is about whether there was a command or not. And that's sort of the framing that you put forward. But can't we just analyze this through the voluntary consent framework? And that's what we usually do to determine whether or not a defendant voluntarily consented to a search. No, your honor. Um, for the simple reason that, that this case is all on all fours with Pope, um, this, this circuit's precedent in Pope and Windsor, which said that when there is a police command, when there is, so I understand your argument and, and what I'm asking you is there is another way that we can do the analysis using the voluntary consent factors. They, they get us to the same place. So if we reject your, if, if there's some confusion about whether or not the question and then the pause and then the statement together constitutes a command or not, there's an alternative analysis that can be done here through the voluntary consent factors. Why, why can't we look at this case through that lens? Yes, your honor. Um, I, I would, your honor, um, you could, um, go through the voluntary voluntariness factors. Um, and I think you would come to the same conclusion. However, um, I think because this is a clear cut command where the officer is using his authority to make Mr. Barone effectuate some type of action that we don't even need to get into the question of voluntariness and consent, because this court's precedent is extremely clear that as a matter of law, there can be no consent to a police demand or command. So what do we do if when we watch the video, we think it just seems like the officer is saying, what is that? And then there's some confusion. And then he says, I'm asking about what's under the seat cushion. Yes, your honor. So I, I would, um, note that, um, I think you need to look at the video in context of the whole interaction in the video, as well as the testimony, um, at the evidentiary hearing and the government's concessions. So first the, the, the whole video itself, this is a traffic stop. Um, officer Tron approaches Mr. Barone, you know, quite annoyed. Um, he has his gun unholstered and pointed at the ground. Um, then he gives Mr. Barone a series of commands. Give me your ID. Mr. Barone gives him his ID. The officer keeps the ID in his possession. Then he orders Mr. Barone to get back in the car. Mr. Barone follows that command, gets back in the car. Then Mr. Barone, um, then officer Tron orders, Mr. Barone to get back out of the car. Officer Barone, uh, Mr. Barone does that. Um, and then there's that command of under the seat, which Mr. Barone lifts up the seat cushion. So if you look at it in this series of, um, constant requests by the officer that demanded compliance, um, this wasn't any different addition. I'm, I'm, I'm, I may not be understanding your argument that you're making and why, um, you're focused so much on the command. So that's relevant here. Only if the command is a search, a command to search, or in some way we can categorize it as a search. Do you agree with that? Yes. You could command somebody to do all kinds of things and some of them wouldn't be anything to do with a search. Yes, Your Honor. So in this case, because the command, um, involved Mr. Barone lifting up the seat cushion and he had a reasonable expectation of privacy and what was underneath his seat cushion in his car. Um, that's why this command implicates a search. And did the district court find that this command, if we'll just call it that for a minute, was a search, like did the district court make that kind of a finding that we would then review for clear error? So the district court, Your Honor, um, found that Mr. Barone voluntarily removed the seat cushion and cited, um, a Supreme Court case called Mendenhall, which, um, was a case about voluntarily consent to a, a request by an officer. But the part where that was cited is just about voluntarily walking with the officer. It's not about the search part. Yes. Yes. Um, so this court, uh, the, the district court legally erred because it found that Mr. Barone voluntarily lifted up the seat cushion, but instead this court ignored this, this court's precedent, the district court ignored this court's precedent under Pope and Windsor that said, you can never, um, voluntarily consent to a police demand to something that's demanded. That error would only be if there was a police demand. And I think what Judge Forrest is asking you is where does the district court find as a factual matter that there was a command? Because I don't see it. I understand, Your Honor. So I agree that the district court, its order is, is kind of silent on that, on that question itself. Um, and I think that silence is just indicative that throughout this case, the one thing everyone agreed on was that this was a command. This was an order. The government conceded it in its initial briefing, as well as at the evidentiary hearing. Um, at the end of the evidentiary hearing, the government said, Mr. Officer Tron did order Mr. Barone to lift up the seat cushion. But why would the district court have said, oh, I'm looking for the exact sentence, but it's something to the effect of the only possible orders, relevant orders here are the, to get out of the car. Um, and then the question, what's, what is that? Yes, Your Honor. So the, the district court, um, I, the district court did not find that it was a question. Um, I, I think if anything, it's silent on that regard, but the, the officer. I'm not sure that's true because the district court says, after setting up what Judge Freeland just says, there's two things here. There's the command to get out. And then there's the question. The district court analyzes and says the question wasn't coercive or intimidating and a reasonable person would have understood they could have refused to answer. And in fact, the defendant didn't answer the question. So it does seem that there's a, there is a question about what, what do we make of the officer's comment about this cushion and what's under it. I understand. And I, that, um, that, that section of the order specifically talks about the, what is that question, but not the under the seat command. And if, if the district court believed what is that under the seat was just all one question, then Mr. Barone lifting up the seat cushion would have been, you know, spontaneous, right? He wouldn't have used the term voluntarily. Um, and I think too, the fact that this was, um, something that was not in dispute between the parties that, that the district court would have made it, um, a lot more clear, like he did when rejecting the, um, when rejecting the plain view argument, the district court would have made it very clear if he believed this wasn't a, wasn't a command. Um, I would just like to note also, let me ask you this question, since you raised the issue of the plain view, that that's the only argument that was raised by the government below, correct? That was the only defense raised in response to the motion to suppress. Yes, Your Honor. What do we do with the fact that there was never even an argument raised, um, around the consent or, or, uh, the other argument that, that the government makes, which has to do with the protective sweep? Yes, Your Honor. So in its answer in brief, the government said that their, um, acceptance of this was an order was in passing, but, but it wasn't, um, from the very beginning of the case, the government agreed that this was, um, an order for Mr. Barone to move the seat cushion. That's what they said, said in their initial briefing after talking to officer Tron and reviewing all the evidence. And that's what they said after the evidentiary hearing. Um, so I, I think, um, I think any argument now that, that this is a, um, a reasonable suspicion search based on dangerousness or the, um, immediacy of, of gaining control of a weapon. Um, there's just no, they don't have any, any argument to support that. Um, that wasn't any testimony that was elicited at the evidentiary hearing. I don't see you in your briefing arguing labor forfeiture of that issue. Did I miss it? Um, no, no, Your Honor. That is not in the briefing. Um, the, what, what, what isn't in is that the government cannot, um, backtrack from their factual concession, um, at the hearing that this was an order. So that, that's the, that's the concession that we were saying the government can't backtrack on in their answering brief. Well, if we thought that that was a live issue and fair enough, the district court didn't reach it because it wasn't presented. But if, if waiver isn't on the table, couldn't we remand for the district court to make additional fact finding on that issue? Your Honor, I, I don't believe so because I think the record is, is incredibly clear that, that, that was an issue that was never even raised at the evidentiary hearing or in any briefing. Um, no one believed that this was a, a, a search for weapons. Um, not once did officer Tron on the stand say that I was worried that he was going to have a weapon or I was worried that he was dangerous. The off, the district court did not make that finding and the district court reviewed the video, the testimony, um, reviewed all the evidence. Um, so I, I don't think it needs to be remanded for, for that reason. Um, I, I think the record is clear that, um, there, there was no reasonable suspicion, um, to support that, that type of search. Um, I'll give you a minute for a rebuttal, but let's hear from the government. Good morning and may it please the court, Andrew Hayden on behalf of the United States. The district court properly denied the motion to suppress this court should affirm that ruling in order to prevail today. Mr. Barron has to do not one, but two things. First, he has to upset factual findings that were made by the district court specifically about whether or not Mr. Barron received an order and whether or not Mr. Barron complied with the order instead, immediately trying to conceal narcotics. And then second, he needs to convince this court to come to a different conclusion about the impact of the warrantless search that eventually took place. Mr. Barron can't do one or the other, let alone both. I want to start first with some of the inquiry about whether it was, or not a command I'm from judge Phil and judge forest. Uh, I think there's an important distinction in the conversation that hasn't been discussed yet. Although it was discussed a little bit in the briefing, in the opening brief on page 10, they acknowledge that there's actually more to back and forth with Mr. Barron and the officer. It's not just under the seat. It's a whole conversation where Mr. Barron gets off the seat and he holds up the yellow towel and says this, are you referring to this? And that's in the defense opening brief. And it's also cited by judge Moskowitz on page 10, uh, line specifically 18 and 19, where it says Barron lifted a towel that was on top of the extra seat cushion and asked whether the towel was what officer trunk was asking about. And so judge Moskowitz in describing that as a voluntary exchange is saying it wasn't just a question and then a command. It was a back and forth between Barron and the officer where there was a clarification and then sort of a clarification. I'm not asking you about the yellow towel. I'm asking you what was under the seat. So if that's true, why did the officer and the government say that it was an order to, uh, on a command? Well, your honor, the United States is trying to be very candid about the fact that that's what officer trunk testified to. But I think, uh, when you look at judge Moskowitz's order, he explains in the very first footnote, he relied primarily on the video. He relied primarily on the video, but importantly, he then supplemented his view of the facts with the direct and what was a very effective cross-examination by my colleague on the other side. And so what the United States is acknowledging now is that based on the procedural posture where we are, this is what judge Moskowitz found. He found that officer trunk wasn't as precise. Judge Moskowitz, your position was that it was that the plain view doctrine is what allowed the evidence to come in, uh, and, and for the motion to be denied. So I guess I'm, I'm, I'm not understanding your answer to judge Freeland's question, which is, it's not just the concession of the officer and the government's arguments, but you actually advanced only a plain view, um, exception to the warrantless search and not anything else until now, until after judge Moskowitz has already ruled that this, that, that you lose on the plain view and, and this is a consent issue. Well, I would respectfully disagree that he said that we lost on the plain view because I think he ultimately comes to the conclusion that what was immediately apparent is that he was attempting to conceal narcotics, which maybe now had inadvertently been put into plain view by Mr. Barron. And so, but yes, your honor, but I think this court can affirm on any ground found in the record. And so based on what judge Moskowitz found, uh, I think that it's available. And for example, to, uh, my colleague has said that this case is on all fours with United States versus Pope in Windsor. But the important distinction there is there has to be a command that reveals something that you have a reasonable expectation of privacy in, and then it has to be revealed because of compliance with the command. And judge Moskowitz didn't find that there actually was compliance with any of the commands. He specifically found that when he asked him, what is that? Mr. Barron didn't reply. He made that specific finding. And then instead of showing him what was under the seat, he actually judged Moskowitz and he takes up the point to put two commas and say, the court finds that what Mr. Barron did was not comply with the order, but he immediately tried to conceal what Mr, what officer Trung then saw was narcotics. And so even if this court concluded that it was a command, which the United States doesn't think is available on this record, even if this court did, Mr. Barron didn't comply with those orders and it wasn't his compliance that revealed the items and put them in plain view. So that question, what is that? Do you think that that triggers the fourth amendment? No, your honor. I think, I think what judge Moskowitz found is that it's a, it's an interaction, which is a typical and appropriate thing in the middle of a traffic stop. And you have to put it in context as well. I know that it's been conceded and it shouldn't, we shouldn't spend a lot of time on discussing whether or not it was a proper traffic stop, but I think it's important to recognize some of the sort of the sequence of events that's sort of escalating an officer mind. It's not just the brake lights. It's not just the non-stops at the, at the stop signs. It's instead of pulling over to the right side, he gets in a left pocket lane, turns into a crowded church parking lot, opens the door. And, and it is undisputed that officer Trung thought the whole situation was escalating very quickly. He's alone at night. He unholsters his weapon. He's not sure what's happening. It deescalates pretty quickly, but then takes some very dramatic turns. And if you're looking for commands in the record from officer Trung, it's replete with them. Get back in the car. Don't hide that. Move your hand. Stop. Don't move. Officer Trung knows how to make very authoritative commands. He didn't make them in regards to the seat. It was just an exchange, which is appropriate in regards to a traffic stop. So, I mean, I understand the argument and it's a very lawyerly argument because how common people talk, we often say things in a way that if you look at the technical meaning of each word, what we're actually getting at is something different than the words we use. So the question very well could be, what is that? And the implication, the clear implication is, I want to see what that is. And so why shouldn't we, why shouldn't we view it that way? I think that's a fair, a fair way to view it, Your Honor. And I'm not saying it's not. I think what we- If you view it that way, it is a Fourth Amendment incident. Well, Your Honor, I think the most important piece where we are procedurally is that Judge Moskowitz did not. And Judge Moskowitz had both the video and Officer Trung- I don't know about that because if you go back to those words that I was referencing with your friend across the aisle, the question was not coercive or intimidating. A reasonable person would have understood they could refuse to answer. We don't care about any of that if this isn't a Fourth Amendment event. Like all of that is irrelevant. Correct. And I think he only talks about Mendenhall. He only cites that case in regards to that exchange about what is that, just the question. He doesn't talk about Mendenhall and the application of the movement of the seat cushion itself. I guess my point is that the district court's thinking here about how I should consider this question, all of that thinking would be completely irrelevant if we don't have a Fourth Amendment event. And so by the district court doing that thinking, it seems to be that the district court is impliedly saying this is a Fourth Amendment event. Well, I think it evolves into a Fourth Amendment event. And what Judge Moskowitz is saying is during this interaction, which he used the word voluntary multiple times during this interaction, Mr. Barron doesn't comply with it. He doesn't respond. He's not responsive to the question. He doesn't tell him what's under the seat. He doesn't comply with what he's telling him. He doesn't even comply eventually when he says, don't move, don't move, but he doesn't comply. And the compliance under Pope and Windsor is required to then be violative of the Fourth Amendment. I'm a little confused your response to Judge Forrest because you said it does evolve into a Fourth Amendment event. Where do you think it became a Fourth Amendment event on your version? Well, I think it becomes a Fourth Amendment event when it becomes immediately apparent that he's hiding narcotics. And then there's both reasonable suspicion and probable cause to search the vehicle without a warrant. I think that that's eventually where the interaction goes. They hardly have to search the vehicle at that point. It's just there. It's just there. It's just there. Despite the fact that Mr. Barron's trying to conceal it, the officer can see it. And that is what Judge Moskowitz found, that it was immediately apparent to him that he was hiding narcotics. And prior to that, he had concerns about weapons is what Judge Moskowitz found. So if we take your argument here at face value, which is it evolves into a Fourth Amendment issue. So we have to now do an analysis and the government has to satisfy its burden to be able to show that there is an exception to the warrantless search requirement. Which exception do we apply? I think this court can affirm on any ground that exists in the record. And so I think there's a whole... I'm asking you for which argument are you sticking to? Because you've sort of evolved here from making sort of the plain view argument. Now you're saying that Judge Moskowitz sort of relied on this consent framework by talking about how this turned into a Fourth Amendment warrantless search. And it was obvious. I don't know, maybe you're not conceding that this isn't plain view. And then you make this other argument with respect to the protective sweep. So which argument is the government advancing with respect to the exception that applies? Absolutely. We think that this is a plain view exception, that it becomes immediately apparent. Judge Moskowitz, that's our primary advancement. Judge Moskowitz found that it's a Terry Stopp reasonable suspicion. I think both apply. We're supporting Judge Moskowitz's finding that it is both reasonable suspicion and probable cause to search based on what's been revealed to the officer. I think that this court could also apply the automobile exception because there's probable cause at that point that the car contains contraband. I think that all of those things apply. But if you're asking me directly, Your Honor, I think based on what Judge Moskowitz found, it's plain view, which Mr. Barron is not complying with the orders and has inadvertently revealed to the officer that there's contraband in the vehicle. That's the argument that we advanced in front of the district court and we're relying on primarily here. But this court could affirm on any of the grounds that are in the record based on the de novo posture of where we are. What is your answer to this issue of whether you preserved the idea that it might have been a gun? Your Honor, I think that there was a very effective cross-examination. Officer Trung was under that. There's a lot of jurisprudence under the concept of traffic stops. It wasn't discussed, but it but it certainly is inherently in part of a traffic stop. And Judge Moskowitz made that finding, I think, based on the intensity of the video at times that and the nighttime nature of it. Mr. Officer's firearm is unholstered at multiple times during the stop. And it was clearly something that Judge Moskowitz was considering. And I think fairly so. Sorry, I didn't understand that answer at all. So if we disagree with you about this issue of whether it was a search and a command to find the drugs. So you lose on that. Would we remand for an inquiry into whether there was a protective sweep to look for a gun or have you lost that by not raising it below? That's my question. And I'm not sure what your answer. Sure. I apologize. I'll try to be more direct. I don't think we've we've lost that. I don't on the facts and the fact that this whole event is on video and Judge Moskowitz made factual findings about it. I think it's it's sufficient for this court to affirm on that basis as well. I think that Judge Moskowitz actual finding gets us to a search for officer safety. I think that Judge Moskowitz specifically talked about it just inherently with the traffic stop at night and the whole nature of being in close proximity. He talks about how close if we disagree with you on that, then I assume you would prefer a remand. Yes, Your Honor. As opposed to nothing at all.  And then you're going to have to make the arguments before the district court that you've adequately preserved that argument because it was never raised before. Yes, Your Honor. We would prefer a remand and we could revisit that and we could litigate whether or not it's preserved. Yes, we would prefer that. But I think this court could affirm on any basis in the record. And that's our primary search. OK, we have you over your time. Thank you. We took them over. So let's put two minutes on the please. Thank you, Your Honors. The first point I wanted to make was in response to the question of what is that? And right. Mr. Barone picks up the towels like this is what you're referring to. Officer Tron didn't get the answer that he wanted. And that's when he commanded under the seat for Mr. Barone to lift up the seat cushion. And I think the government conceded that this traffic stop was full of commands, full of command after command after command. And this was no different, especially if we look in the record at I believe it's ER 94. Officer Tron says that he has his gun pointed at Mr. Barone when he says under the seat. An officer has his gun pointed at you. He's under those circumstances. No reasonable person would think that's not a command to lift up their seat cushion. And that's why the government conceded that at the district court level from the very beginning. And that's why the officer kept testifying over and over and over again. This was an order. Now, in terms of the I do think the government has. I'm sorry, can I ask? Of course. OK, watching the video, if if someone just says under the seat, why would it mean lift up the seat cushion instead of like look under the whole seat? I don't really understand why it would mean that. Yes, your honor. I think just based on. That was that was Mr. Barone's. Wasn't there a a cushion? There was a cushion on the seat. So and and I read the command to mean under the seat, meaning the cushion, because that is what he pressed on when he was leaning over to get his license and registration. Exactly. And that's what the towel, the little bright towel wasn't on top of. So when you lift that up, no, no. Under the seat. Before I run out of time, this court has never had. There's no precedence that the district court never made a factual finding that here there was specific and articulable facts that Mr. Barone was dangerous or about to immediately gain control of a weapon that was never addressed, that was never brought up by the government. And this this evidentiary hearing was months long. So I believe they waived that issue and didn't argue waiver or forfeiture. No, we did not in our in our briefs, your honor. Thank you. I apologize for going over a little bit. Thank you both sides for the helpful arguments. This case is submitted.
judges: FRIEDLAND, FORREST, DESAI